## JOSEPH v. NATIONAL BANK OF REPUBLIC.

No. 3158.   Decided June 18, 1918.   (173 Pac. 897.)

CORPORATIONS—RATIFICATION.  Where real executive of company appointed manager and authorized him to check out company's fund in bank, and directors ratified manager's acts, the bank, a mere depositary, was not liable to assignee of company for funds so checked out.

Appeal from District Court of Salt Lake County, Third District; *Hon. H. M. Stephens*, Judge.

Action by Harry S. Joseph against the National Bank of Republic.

Judgment for defendant. Plaintiff appeals.

AFFIRMED.

*Hancock & Barnes* for appellant.

*Howat, Marshall, Macmillan & Nebeker* for respondent.

McCARTY, J.

This is an appeal from a judgment rendered on a directed verdict in favor of respondent.

The facts of the case are about as follows: One D. H. Peery, who was, prior to June, 1906, the owner of certain lode claims near Alta in Little Cottonwood Canyon in Salt Lake county, Utah, procured a corporation to be formed under the laws of Arizona to take over and develop the claims. The articles of incorporation were executed and acknowledged in the city of New York. The name of the corporation (hereinafter called company) was West Columbus Copper Company. On July 10, 1906, the incorporators met in New York City and elected a board of directors, and the board of directors elected officers of the company. The officers and directors, with the exception of the manager and the secretary and treasurer, were residents of the state of New York, and the latter two were residents of Salt Lake City, Utah. All directors' meetings were held in New York City.

Peery conveyed the mining claims mentioned to the corporation, and received, substantially, all of the capital stock of the company. The record shows that while Peery was not an officer or director of the corporation, he, nevertheless, directed and dictated its business affairs, all of which was acquiesced in, approved and ratified by, the directors and officers of the company, who only came in touch with the company's business in the most general way.

Charles A. Stoneham, a witness for plaintiff, testified:

That he is "a broker," and that he "handled (sold) both treasury and personal stock" of the corporation. "We were the selling agents for the stock of the company, and the further business of the company was directed through the board of directors in New York. I attended all of the meetings of the board of directors. * * * Mr. Peery brought the property east to be financed and knew all about it. He took whatever action he saw fit, as we considered him the owner of the property." The witness further testified that "the directors were merely figureheads," and that "the board of directors fully understood that Mr. Peery had absolute control of the company, and whatever action was taken by the board of directors would be taken at the suggestion of Mr. Peery absolutely"

Stillman F. Kneeland, a witness for defendant, was one of the incorporators and a director of the corporation, and testified, in part, that:

"Mr. Peery took all the stock, except possibly ten shares. * * * Peery was the dominating spirit; it was really his property, I think; it was his will that governed. * * * Mr. Peery was present, and the actions taken by the board of directors at their several meetings were taken at his suggestions. He knew what was being done, and I am quite positive he told us beforehand what he wanted done."

Ross F. Robertson, a witness for defendant, testified:

That he was one of the original incorporators of the company. "There were only a very few shares of·stock issued to each one of the directors, probably a share each. I do not believe there were over ten or twelve shares issued. Peery was the whole thing. I was very familiar with anything done at meetings held in New York City regarding the company. These meetings were called at the instance of Mr. Peery, and he said what action should be taken. Mr. Peery dominated everything in connection with the company."

On September 27, 1906, an ,account was opened with the National Bank of the Republic, defendant herein, by the West Columbus Copper Company, and, beginning with that

date, there was deposited to the credit of the company various sums of money. The last deposit was made June 27, 1911. The total amount of money deposited was $12,880.33. Eleven checks were drawn on this account in the name of the West Columbus Copper Company, signed by Sidney M. Bamberger, general manager, J. A. Shorten, secretary, and countersigned by W. F. Adams, treasurer. The first check so drawn was dated November 12, 1906. The eleven checks aggregated $935.45. Sidney M. Bamberger became sick. He was afflicted with some kind of progressive disease, and for a long time was unable to attend to business, and signed no checks drawn on defendant bank after November 12, 1906. On November 12, 1906, Peery made arrangements with one A. O. Jacobson to act as manager of the mine and to have general superintendence of it at a salary of $50 per month. Mr. Peery on that day went with Jacobson to defendant bank, and introduced him to Mr. Knox, the president of the bank. Mr. Peery informed Mr. Knox that Jacobson was going to assume the company's management, and that the bank was to honor checks that were drawn in the name of the company by Jacobson. A signature card was handed to Mr. Jacobson, which he signed and delivered in the presence of Mr. Peery. The date on the card is 11—12—06, which was November 12, 1906. The writing on the signature card was "West Columbus Copper Company by A. O. Jacobson, manager." From November 18, 1906, to February, 1907, Mr. Jacobson had drawn 31 checks on the bank aggregating $4,111.81.

On February 7, 1907, at a special meeting of the company held at the office of the company in the city of New York, Mr. Peery informed the board of directors that he had on behalf of the company appointed A. O. Jacobson manager of the property of the company, and had authorized him to sign checks of the company for the expenses and operation of the mine, and had agreed to pay him $50 per month for his services. At that meeting the following resolution was adopted by the board of directors:

"Whereas, Mr. A. O. Jacobson has on behalf of the company been acting as acting general manager of the company

under an agreement made and entered into by Mr. D. H. Peery on behalf of the company; and whereas, said A. O. Jacobson has, pursuant to his duty as manager, made certain withdrawals of moneys from the treasury of the company, signed by himself as manager, including the sum of $50.00 per month for his services: Now, therefore, be it resolved that the appointment of the said A. O. Jacobson as manager be, and the same is, ratified and confirmed, and that the payments made by the said A. O. Jacobson on behalf of the company in the operation of the property, including $50.00 per month for his services, be, and they hereby are, ratified and confirmed.''

Peery died in December, 1907. The record shows that the meeting of February 7, 1907, was the last meeting held by stockholders or directors of the company in New York City, or at any other place, until just before the commencement of this action, a period of about seven years, when a meeting was held to reorganize so as to enable the company to make an assignment to the plaintiff, Harry S. Joseph, of its alleged claim against the bank for the money that had been paid out on checks drawn by Mr. Jacobson. The minutes of that meeting recite, so far as material here:

''That the claim which this company has against the National Bank of the Republic for $12,837.13  *  *  *  is hereby transferred to H. S. Joseph  *  *  *  in consideration of said Joseph paying over to the company one-half of all moneys received; with the express understanding that all expenses of litigation be borne by said Joseph.''

This evidence, in a legal sense, is of but little, if any, importance. It nevertheless tends to show that the directors and officers of the company had but little, if any, confidence in the legality or justness of the claim. For a corporation or person engaged in business to assign for collection a claim— money deposited in a solvent bank—of the magnitude of the claim under consideration, which the assignor believes to be meritorious and just, and agree to pay one-half of the amount,

or nearly $6,500, as a fee for collecting the same, is, we think to say the least, very unusual. Be that as it may, the bank in this case did not, nor was it necessary for it to, rely on any inference that might be drawn from the circumstance to uphold the judgment.

The record shows that the bank was a mere depository only of the fund in question. It is not claimed, nor is there a fact or circumstance in the case which tends to show, that the bank, or any of its officers, derived any benefit whatever by honoring and paying the checks issued by Jacobson against the fund mentioned, or that the bank acted in bad faith. For aught that appears in the record the money withdrawn from the bank by Jacobson was used in paying expenses necessarily incurred in developing the mining property in question. Counsel for appellant in their brief mention "withdrawals in the bank and fraudulent disposition of the corporate funds," but there is absolutely no evidence whatever in the record that justifies the statement.

Appellant insists that there is a substantial conflict in the evidence as to whether the directors ratified the acts of Peery in appointing Jacobson manager of the company and authorizing him to issue checks against the company's funds on deposit in the bank, and that therefore the court erred in refusing to submit the case to the jury and by directing a verdict for the bank.

A witness for plaintiff testified that he was with Mr. Peery "in the morning and afternoon" of February 7, 1907, in New York City, the day on which it is claimed on behalf of the bank that the resolution referred to was passed by the board of directors, and that Peery on that occasion was confined to his room; that "he contracted a cold, * * * and was complaining of an acute pain in the back;" that he did not think Peery was confined to his bed. It is claimed that this evidence is in conflict with the evidence introduced on behalf of the bank respecting the adoption of the resolution mentioned. We do not think so. The witness testified that

he was with Peery "in the morning and afternoon"—how late in the afternoon he does not say. Plenty of time may have elapsed after the witness saw Mr. Peery for the latter to attend the meeting and make his report respecting the employment of Jacobson, etc. The testimony, therefore, of this witness is not necessarily in conflict with that of the witnesses who testified that they were present at the meeting and that Peery also was in attendance. Furthermore, Peery was not a director of the company, and his presence was not absolutely essential in the adoption of the resolution.

Numerous other alleged errors are assigned, but we do not deem any of them of sufficient importance to warrant further discussion.

The undisputed facts in this case absolutely preclude a recovery by plaintiff from the bank. If the cause had been submitted to the jury and a verdict returned for plaintiff, no court worthy of the name would have permitted the verdict to stand.

The judgment is affirmed. Respondent to recover costs.

FRICK, C. J., and CORFMAN, THURMAN, and GIDEON, JJ., concur.